# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LORI WILLIAMS**, | **CIVIL ACTION** |
| Plaintiff, | |
| v. | **NO. 20-5527-KSM** |
| **FEDERAL EXPRESS CORP.**, | |
| Defendant. | |

## MEMORANDUM

**MARSTON, J.**                                                                                        **April 28, 2022**

Plaintiff Lori Williams brings this lawsuit against her employer Defendant Federal Express Corporation ("FedEx"), alleging that FedEx discriminated against her on the basis of race[1] and gender under Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA").  (Doc. No. 1.)  Williams began working for FedEx in 1995 and contends that certain of her co-workers and managers made harassing comments and discriminated against her at various points since the beginning of her career with FedEx until July of 2019.  (*Id.* at 8–11.)  Presently before the Court is FedEx's motion for summary judgment.  (Doc. No. 23.)  For the reasons below, FedEx's motion is granted.

---

[1] Count One is the Title VII race-based discrimination claim and Count Two, although labelled "National Origin Discrimination," is the mirrored race-based discrimination claim under the PHRA, as Williams alleges that she was discriminated against "*on the basis of her race (African American)*." (Doc. No. 1 at ¶¶ 84–86.)  Williams's counsel conceded that the "National Origin Discrimination" label was a typographical error.  (*See* Apr. 21, 2022 Hr'g Tr. at 16.)  Accordingly, the Court's analysis herein construes Count Two as a race-based discrimination claim.

I. **BACKGROUND**

   A. *Factual Background*

Viewing the evidence in the light most favorable to Williams, the relevant facts are as follows.

Williams, an African American female, began working for FedEx in 1995 and was based out of FedEx's West Chester, Pennsylvania station. (Doc. No. 26-2 ¶¶ 1, 3.) In 1997, she was promoted to a "courier" position and drove "pickup and deliver" vans (which are smaller than standard box-style delivery trucks) for the majority of her career with FedEx. (*Id.* ¶ 2.) Williams believes that FedEx denied her the opportunity to work overtime and terminated her on the bases of her race and gender.[2] (Doc. No. 1 ¶¶ 75–98.)

   1. **Williams's Request to Work More Overtime**

Williams claims that she was scheduled for fewer overtime shifts than her Caucasian male co-workers. When FedEx needs additional couriers, a manager will post a sheet for interested couriers to sign up to work overtime. (Doc. No. 26-1 at 53.) Seniority "plays a part" in determining which couriers receive the available overtime shifts. (*Id.*) Williams has been awarded overtime shifts based off this sign-up system. (*Id.*)

In 2017, FedEx's West Chester station sent employees to the Jersey Shore to assist with increased capacity during the summer tourist season. (Doc. No. 23-4 at 4.) The managers posted a sign-up sheet for couriers to take these overtime shifts. (*Id.*) Williams did not sign up, but after the sign-up sheet was removed and employees had been selected for the shifts based on

---

[2] In her complaint, Williams identifies multiple one-off comments she experienced over her twenty-four-year tenure at FedEx that she felt were harassing or discriminatory. Williams has not brought a hostile work environment claim, and her counsel conceded at oral argument that these one-off comments she experienced are time-barred and do not form the bases of any of the claims she is pursuing in this action. (*See* Apr. 21, 2022 Hr'g Tr. at 22.)

their seniority, Williams approached Tom McDermott, a senior manager, about potentially working some of these shifts. (*Id.*) McDermott put Williams in touch with the manager of the Atlantic City, New Jersey FedEx station. (*Id.*) The manager chose not to offer Williams any shifts because she "had too many conditions, including when she would start, when she would finish, and areas she was willing to work." (*Id.* at 3–4.) Two less senior employees, who did not have similar conditions, were ultimately chosen to work the overtime shifts at the Shore. (Doc. No. 26-1 at 53.)

### 2. The June 27, 2019 Accident and Williams's Termination and Eventual Reinstatement

On June 27, 2019, Williams reported to work and drove her usual route. (Doc. No. 26-2 ¶ 26.) While leaving a customer's house after making a delivery, she backed into the customer's garage, damaging the corner of the garage and the gutter. (*Id.* ¶ 28.) The accident also dented the top left corner of the van Williams was driving. (*Id.*) At the time of the accident, the air conditioning was on and the van's backup camera was not working, so Williams did not see or hear the accident. (*Id.* ¶ 27; Doc. No. 26-1 at 28.) Williams had already been involved in ten preventable accidents in her tenure with FedEx at the time of this accident. (Doc. No. 26-2 ¶ 31.)

When Williams returned to the FedEx station, she completed a routine post-trip Vehicle Inspection Report ("VIR")[3] and did not report any damage to the van. (Doc. No. 23-3 at 136.) Another driver took the van Williams had been driving for his shift and likewise did not indicate any damage to the van on his pre- or post-trip VIRs. (*Id.* at 136–37.) On June 28, the day after the accident, Williams was assigned to the same van. (*Id.* at 138.) It was then that Williams

---

[3] Both before and after operating a vehicle, the driver must complete a VIR. (*See* Apr. 21, 2022 Hr'g Tr. at 5.)

3

noticed for the first time the damage to the top of the van and reported it on her pre-trip VIR.[4] (*Id.* (June 28, 2019 VIR completed by Williams indicating "Top left side dent??").) A vehicle maintenance technician confirmed the damage on June 30. (*Id.*)

Unbeknownst to Williams, the customer whose home was damaged verbally complained to FedEx shortly after the accident. (*Id.* at 134.) FedEx manager JoAnne Puoci investigated the complaint and determined that Williams had been driving the van at the time of the accident. (*Id.*) The customer sent photographs of the damage to Puoci on July 1. (Doc. No. 26-2 ¶ 28.)

On July 2, following receipt of the photographs, Puoci and McDermott asked Williams to provide a written statement about the damage to her vehicle but did not mention the customer's complaint. (Doc. No. 23-3 at 139.) Williams was uncertain why she was being asked to write a statement and simply wrote "this is odd because when I shared another prior damage . . . this statement was not required." (*Id.*) McDermott asked Williams why her statement "did not address the current damage." (*Id.* at 161.) Williams immediately "became agitated and walked out of the office"; she also "started taking pictures of the [VIR] book . . . and attempted to record the meeting on her cell phone." (*Id.*)

On July 5, Williams was terminated for failing to report the damage to her vehicle and the customer's property.[5] (*Id.*) Williams appealed her termination, and on August 8, her termination was reversed and converted into a Warning Letter. (*Id.*) Neil Connolly, the managing director who reversed the termination, explained that he did so because it was possible

---

[4] During oral argument, the parties agreed that Williams first reported the June 27 accident on a VIR completed during her June 28 pre-trip inspection. (*See* Apr. 21, 2022 Hr'g Tr. at 25.)

[5] Pursuant to FedEx policy, couriers are required to report accidents to their managers. (Doc. No. 26-2 at 19.) At oral argument, FedEx's counsel explained that this is a strict liability policy, and employees can be terminated for failing to report an accident regardless of whether they knew of the accident. (*See* Apr. 21, 2022 Hr'g Tr. at 30–31.)

4

Williams "did not know the drain pipe on the house was struck." (*Id.*)  Though her employment was reinstated, Williams did not receive back pay for the time she was out of work. (*Id.*)[6]

### B. *Procedural History*

Williams filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission; she received a right-to-sue letter from the EEOC on August 4, 2020. (Doc. No. 1 ¶¶ 15–16.)  Williams initiated this action on November 5, 2020.  (Doc. No. 1.)  Following a period of discovery, FedEx moved for summary judgment on all claims.  (Doc. No. 23.)  FedEx argues that Williams fails to establish a prima facie case of discrimination and that, in any event, she was terminated for a legitimate, non-discriminatory reason.[7]  (Doc. No. 23-1 at 10–13.)  Williams opposes the motion for summary judgment and argues that she has established a prima facie case for discrimination and that there is a genuine factual dispute as to whether FedEx's stated reason for terminating Williams is mere pretext.  (Doc. No. 26 at 8–14.)

## II. LEGAL STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

---

[6] In March 2021, Williams was demoted to a non-driving job due to the high number of preventable accidents in which she had been involved. (Doc. No. 26-2 ¶¶ 33–35.) Williams does not claim this demotion as a basis for her discrimination claims. (*See generally* Doc. No. 1.)

[7] FedEx also argues that Williams "fails to assert sufficient facts to warrant punitive damages." (Doc. No. 23-1 at 18.) In her response brief, Williams "withdraws her request for punitive damages." (Doc. No. 26 at 14.)

requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "[T]he inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and alterations omitted).

### III.   DISCUSSION

Williams brings claims for race and gender discrimination under Title VII and the PHRA. (Doc. No. 1 ¶¶ 75–95.) Title VII and the PHRA are analyzed under the same legal standard, so the Court will consider the claims together. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 464 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims." (citing *Kelly v. Drexel Univ.*, 94 F. 3d 102, 105 (3d Cir. 1996))). And because Williams's race- and gender-based claims arise out of the same facts, the Court analyzes the claims as one.

The *McDonnell Douglas* burden shifting framework governs Williams's discrimination claims. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). Under this framework, Williams must establish a prima facie case of discrimination. *Id.* If she can do so, the burden shifts to FedEx to establish a legitimate, non-retaliatory reason for her termination. *Id.* Once FedEx has done so, the burden shifts back to Williams to show that FedEx's stated reason is pretextual. *Id.*

### A. *Prima Facie Case*

To establish a prima facie case of race or gender discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Wesley v. PNC Bank*, CIVIL ACTION NO. 19-5052, 2020 WL 7319548, at *3 (E.D. Pa. Dec. 11, 2020) (citing *Jones*, 198 F.3d at 410–11)).

The parties agree that Williams is a member of a protected class, was qualified for her position, and suffered adverse employment actions—namely, losing out on overtime opportunities to more junior employees and being terminated after failing to report an accident. (Doc. No. 23-1 at 8.) But the parties disagree as to whether the adverse employment actions Williams suffered occurred under circumstances that give rise to an inference of intentional discrimination. (*Id.*)

To establish that an adverse employment action occurred under circumstances that give rise to an inference of discrimination, a plaintiff may either (1) "introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances)" or (2) "rely on circumstantial evidence that otherwise shows a causal nexus between [the plaintiff's] membership in a protected class and the adverse employment action." *Greene v. V.I. Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014).

The Court considers whether Williams has satisfied the remaining disputed element (and thus established a prima facie case of discrimination) as to each alleged adverse action in turn.

### 1. Overtime Shifts Were Assigned to Less Senior Employees

To support her claim that she was denied the opportunity to work overtime on the basis of her race and/or gender, Williams argues that RJ Deitrick and Jerrod Travers, Caucasian, male employees with less seniority than her, were "given more overtime opportunities" than she was.[8] (Doc. No. 26 at 9; *see also* Doc. No. 26-1 at 53–54 (Williams testifying that she believed Travers and Deitrick "had more overtime opportunities" than she did).)  Comparator evidence will only support a showing of disparate impact where the comparators are similarly situated to the plaintiff.  *Durst v. City of Philadelphia*, 798 F. App'x 710, 713 (3d Cir. 2020).  "Similarly situated" does not mean "identically situated," but a plaintiff and the comparators must be similar "in all relevant respects."  *Id.*  In assessing whether comparators are similarly situated to a plaintiff, a court must consider factors such as "whether the comparators had the same supervisor, were subject to the same standards, and had engaged in similar conduct."  *Id.*

Both comparators were similarly situated to Williams.  Williams and the comparators all worked as couriers at the West Chester FedEx station, and all three employees channeled their requests to work overtime at the Jersey Shore through McDermott and the Atlantic City station manager.  (Doc. No. 23-4 at 3–4; Doc. No. 26-1 at 53–54.)  And Williams was treated differently than the comparators.  The comparators were selected for overtime based on their seniority (Doc. No. 23-4 at 3), but Williams was not granted the same overtime shifts even though she was *more senior* than the comparators (Doc. No. 26-1 at 53–54).

Accordingly, Williams has satisfied her prima facie burden by demonstrating that these

---

[8] Williams does not identify any specific instance in which more junior employees were awarded overtime instead of her, but FedEx mentions one instance of this (the overtime shifts awarded in the summer of 2017 at the Jersey Shore), and Williams does not dispute that this is the instance on which she is basing her discrimination claims.

8

more junior, Caucasian male employees were awarded overtime and she was not. *See Edwards v. Albert Einstein Med. Ctr.*, 533 F. Supp. 3d 215, 221–22 (E.D. Pa. 2021) (holding that a comparator was similarly situated where the comparator and the plaintiff "both worked at least occasionally in the [same division], they both reported to the [same supervisor], and they both participated in restraining [a patient]"); *Abdul-Latif v. County of Lancaster*, 990 F. Supp. 2d 517, 526–27 (E.D. Pa. 2014) (finding that the plaintiff stated a prima facie case of discrimination where the plaintiff identified another employee who "worked for the same employer, in the same building, reported to the same supervisor . . . , and violated the same email policy").

### 2. Termination

Next, the Court turns to Williams's claim that her termination for failing to immediately report her accident on June 27 was actually termination on the basis of her race and/or gender. To support her claim, Williams provides both comparator and circumstantial evidence.

#### a. Comparator Evidence

In her brief in opposition to Defendant's motion for summary judgment, Williams argues that the Court can infer that her termination was motivated by discriminatory intent because Harden Dean Mitchell, a Caucasian male, was not terminated for failing to wear a seatbelt in a company vehicle. (Doc. No. 26 at 9.) To be similarly situated, a comparator must have engaged in comparably serious conduct as the plaintiff. *Wright v. Providence Care Ctr., LLC*, 822 F. App'x 85, 93 (3d Cir. 2020). "Comparable seriousness may be shown by pointing to a violation of the same company rule, or to conduct of similar nature." *Id.* (quoting *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 682, 289 (7th Cir. 2007)).

Here, the proffered comparator is not similarly situated to Williams, as Williams' counsel agreed during oral argument. (*See* Apr. 21, 2022 Hr'g Tr. at 27.) Williams was terminated for

9

failing to report an accident in a company vehicle, whereas Mitchell was terminated because he did not wear a seatbelt. (Doc. No. 26 at 9.) Although both offenses may violate FedEx policy, they are different and wholly unrelated. Because the comparator committed an entirely different offense than did Williams, the two are not similarly situated. *See Wright*, 822 F. App'x at 93 ("[The comparator's] workplace infractions, almost all of which were a species of poor job performance, were serious but qualitatively different from the disorderly conduct that got [the plaintiff] fired. . . . Consequently, [the plaintiff's] comparator-based . . . argument fails."); *Tamburello v. City of Allentown*, Civil No. 5:20-cv-06153, 2022 WL 377400, at *8 (E.D. Pa. Feb. 7, 2022) (holding that the comparators and the plaintiff were not similarly situated where the plaintiff's disciplinary record differed from his comparators' records); *Interrante v. Merck & Co., Inc.*, Civil No. 2:19-cv-00263, 2021 WL 4306214, at *4 (E.D. Pa. Sept. 22, 2021) ("Bundt and Proctor are not appropriate comparators. Neither Bundt nor Proctor physically entered the trash compactor. Their infractions were serious, but qualitatively different from the conduct that prompted Interrante's termination." (cleaned up)).

Moreover, FedEx has presented rebuttal evidence of Caucasian male couriers who *were* terminated for the same reason Williams was terminated—failing to report an accident. (*See* Doc. No. 23-5 ¶ 4 (demonstrating that courier Davis Ellis, a Caucasian male who worked at the West Chester station, was terminated for "unreported damage to a vehicle assigned to [him]"); *id.* ¶ 5 (demonstrating that Christopher Ciatto, a Caucasian male who worked at the West Chester station, was terminated because he "failed to report [an] accident to a member of management, failed to properly complete the post trip of the vehicle, and failed to document the damage that incurred while on the road that day").) At oral argument, Williams's counsel claimed that these are not true comparators because they were involved in more serious accidents so they must have

known that their vehicle was damaged, while Williams was unaware of her accident at the time it happened. (*See* Apr. 21, 2022 Hr'g Tr. at 20–21.) FedEx responded, contending that the comparators are similar because Williams must have been aware of her accident given the extent of damage to the van and the customer's garage. (*See id.* at 30.)

At the summary judgment stage, the Court cannot make credibility determinations and must view the evidence in the light most favorable to Williams, so we must assume that Williams did not know about the accident. This renders FedEx's proffered comparators differently situated. But under the *McDonnell Douglas* burden-shifting framework, *Williams* bears the burden of establishing a prima facie case of discrimination, and the mere fact that FedEx's proffered comparators are not true comparators does nothing to establish Williams's prima facie case.

In short, Williams has not shown that her termination happened under circumstances that give rise to an inference of discrimination through comparator evidence.

### b. Circumstantial Evidence

Williams also argues that the fact that FedEx terminated her hastily and unjustifiably is circumstantial evidence that her termination occurred under circumstances that gives rise to an inference of discrimination. (Doc. No. 26 at 12.) Specifically, Williams contends that FedEx's citation to the wrong policy in her termination letter and FedEx's ultimate reversal of its termination decision illustrate that FedEx's decision to terminate Williams was motivated by discriminatory animus. (*Id.*)

Viewing the record in the light most favorable to Williams, the Court acknowledges that there appears to be some irregularities in the events leading up to and following Williams's termination. For instance, Williams was purportedly terminated for failing to report the accident,

but she was not aware of the accident and reported the damage to her vehicle immediately upon noticing it.  (Doc. No. 23-3 at 136–38.)  And although Williams did not report the damage to her van on the day of the accident, she could not have because she did not notice any damage—she only had five minutes to inspect the van, and the damage was at the top left corner of the van, so it was difficult to see.  (*Id.*)  In fact, the damage was so out of sight that the driver who had the van next *also* missed it.  (*Id.* at 137.)  Additionally, the initial letter Williams received in July 2019 suspending her pending an investigation stated that she was being suspended for an "alleged violation of Acceptable Conduct Policy; P-2-10."  (Doc. No. 23-3 at 133.)  Policy P-2-10 is the drug and alcohol policy, while Policy P-2-5 is the policy that required employees to timely report accidents.  (Doc. No. 23-4 at 22–23.)  Williams never violated the drug and alcohol policy, and although Williams's counsel conceded at oral argument that any reference to the drug and alcohol policy was likely a typographical error (*see* Apr. 21, 2022 Hr'g Tr. at 23), he argued that the error is further proof that FedEx was trying to expedite Williams's termination (*see id.*; Doc. No. 26-1 at 9).  Finally, Williams's Managing Director overturned her termination "[a]fter a thorough review of the facts and circumstances, including a review of [her] entire work history," which Williams interprets as an admission by FedEx that the decision to terminate her was motivated by discriminatory animus.  (Doc. No. 23-3 at 158.)

Williams's subjective belief that her termination was motivated by discriminatory intent is insufficient to support an inference of discrimination.  *See Tucker v. Thomas Jefferson Univ.*, Civil Action No. 09–1197, 2010 WL 5464787, at *3 (E.D. Pa. Dec. 30, 2010) ("[P]laintiff's subjective belief that race played a role in an employment decision is not, alone, sufficient to establish an inference of discrimination." (quoting *Wilson v. Blockbuster*, 571 F. Supp. 2d 641, 647 (E.D. Pa. 2008)).  To show discriminatory intent, Williams must present circumstantial

evidence that she was terminated *because* of her race or gender. *Greene*, 557 F. App'x at 196. Although Williams has presented evidence of irregularities during her termination process, she has not adduced any evidence tying these irregularities to her race or gender, and these irregularities, without more, are not enough to establish discriminatory intent. *See id.* ("The evidence actually produced amounts to a collection of stray remarks and unconnected, coincidental circumstances, and related speculation and conjecture. Even in sum, and considered in the light most favorable to him, such evidence does not a causal nexus make."); *McCowan v. City of Philadelphia*, CIVIL ACTION NO. 19-3326-KSM, 2022 WL 758991, at *20 (E.D. Pa. Mar. 10, 2022) (holding that the fact that an employee's assigned duties were "unheard of" did not evidence discriminatory intent); *Gulati v. Chao*, Civil Action No. 17-6271 (RMB/AMD), 2019 WL 4597567, at *8 (D.N.J. Sept. 23, 2019) (holding that "two stray remarks unconnected to the complained of employment action" were insufficient to prove a "causal link between the adverse action and the allegedly discriminatory animus"). *Contra Gates v. Aramark Campus, LLC*, CIVIL ACTION NO. 21-1081, 2022 WL 245303, at *6 (E.D. Pa. Jan. 24, 2022) (holding that the circumstances of the plaintiff's termination gave rise to an inference of gender discrimination where the plaintiff was the only female employee, her team was a "boy's club," and, upon termination, she was replaced by a man).

Moreover, despite any seeming irregularities in Williams's termination process, FedEx followed the letter of its policy in conducting the process. FedEx's Acceptable Conduct policy provides that employees may face "disciplinary action, up to and including termination," for "[f]ailure to timely report a vehicle accident" and for "[d]amage . . . of FedEx . . . equipment as a result of deliberate *or negligent* action." (Doc. No. 23-4 at 22–23.) *See Townes v. Potter*, Civil Action No. 10–1780, 2012 WL 130533, at *5 (E.D. Pa. Jan. 13, 2012) ("Because the evidence

13

shows that Defendant was merely following its own regulations, a reasonable jury could not find an inference of discrimination based on these facts.").

Williams has thus failed to identify circumstantial evidence showing a causal nexus between her termination and her race or gender, so she has failed to state a prima facie case of discrimination as to her termination.

\*   \*   \*

In sum, Williams has stated a prima facie case of discrimination on the basis that she was denied overtime opportunities, but she has failed to establish a prima facie case of discrimination as to her termination.

### B.   *Legitimate, Non-Discriminatory Reason*

Given that Williams states a prima facie case of discrimination (to the extent she was awarded less overtime than similarly situated co-workers), the burden now shifts to FedEx to prove that it had a legitimate, non-discriminatory reason for awarding the overtime shifts to employees more junior than Williams. As noted above, the only specifically identified instance in which Williams was not granted overtime but more junior employees were was for the Jersey Shore overtime shifts awarded in the summer of 2017. FedEx explains that it did not grant Williams the overtime shifts she requested because her willingness to work overtime was conditional—she wanted control over "when she would start, when she would finish, and the areas she [would] work."[9] (Doc. No. 23-4 at 3.) FedEx "needed someone to help solve problems[,] not create scheduling and timing obstacles," so the Atlantic City manager chose not to award Williams the shifts. (*Id.* at 3–4.) Williams's unwillingness to accept the shifts offered

---

[9] FedEx also contends that Williams did not sign up for the overtime shifts when they were initially posted, but it does not suggest that she was denied the overtime because she did not sign up on the initial posting. (Doc. No. 23-4 at 3.)

x

as-is was a legitimate, non-discriminatory reason for FedEx not to award Williams the shifts she requested.  *See Purnell v. Radnor Twp. Sch. Dist.*, Case No. 19-cv-00612-JDW, 2020 WL 3127972, at *6 (E.D. Pa. June 12, 2020) (holding that the defendant proffered a legitimate, non-discriminatory reason for terminating the plaintiff where she had "scheduling problems").

    **C.**    ***Pretext***

The burden now shifts back to Williams to establish that FedEx's stated reason for denying her overtime is merely a pretext for discrimination.  To show pretext, "[a] plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *Burton v. Teleflex Inc.*, 707 F.3d 417, 427 (3d Cir. 2013) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)).  A plaintiff may discredit an employer's stated reason by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence."  *Fuentes*, 32 F.3d at 765.

Here, Williams argues that "[s]ufficient evidence exists for a reasonable factfinder to conclude Defendant's reasoning *for terminating* Plaintiff was truly motivated by discriminatory intent."  (Doc. No. 26 at 10 (emphasis added).)  But Williams does not argue that FedEx's stated reason for denying her overtime opportunities was pretextual.  (*See generally* Doc. No. 26 (failing to present any argument that FedEx's stated reasons for denying Williams overtime were pretextual).)  She has not attempted to identify any weaknesses in FedEx's proffered reason for denying her request for overtime, nor has she identified any evidence that discrimination was

"more likely than not" the reason FedEx denied her overtime opportunities.[10] Williams bears the burden of demonstrating pretext, but she has not even attempted to do so. Accordingly, Williams's discrimination claims fail.

## IV. CONCLUSION

For the reasons above, the Court grants FedEx's motion for summary judgment. An appropriate Order follows.

---

[10] Even if Williams had argued that FedEx's reasons for denying her overtime were pretextual, her claims nevertheless fail because there is not sufficient evidence in the record to support a finding of pretext. To show pretext, a plaintiff may offer comparator evidence to demonstrate that the employer was motivated by discriminatory animus. *See Carroll v. Guardant Health, Inc.*, 511 F. Supp. 3d 623, 649 (E.D. Pa. 2021). As discussed above, *see supra* Section III.A.2, Williams has offered comparators—two couriers who were awarded overtime shifts instead of Williams despite Williams's seniority. Although these comparators are similarly situated for the purposes of stating a prima facie case of discrimination, they are not similarly situated for the purposes of establishing pretext. There is no record evidence that either of the two comparators conditioned their commitment to work overtime on having the ability to choose when, where, and how much they would be working, but Williams did, and that is why she was not awarded the shifts. *Cf. McWilliams v. Cmty. Educ. Ctrs.*, CIVIL ACTION NO. 14-4783, 2015 WL 12843826, at *3 (E.D. Pa. Nov. 13, 2015) (holding that comparators who violated different policies than the plaintiff were not similarly situated to the plaintiff).